# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA,**

    Plaintiff,

-vs-            Case Nos. 10-CR-268
                                  15-C-107

**SAGARSEN HALDAR,**

    Defendant.

## DECISION AND ORDER

Sagarsen Haldar was sentenced to 37 months in prison after a jury found him guilty of "conspiring to defraud the United States by using his position as leader of a Hare Krishna temple in Milwaukee to obtain religious-worker visas for people who were not actually religious workers." *United States v. Haldar*, 751 F.3d 450, 453 (7th Cir. 2014). Haldar's conviction was affirmed on direct appeal. *Id.*

Three months before he finished serving his sentence, Haldar moved for relief under 28 U.S.C. § 2255. Then, about a month and a half before he was released, Haldar filed a motion to convert this case to a petition for a writ of *coram nobis*, anticipating that he would no longer be in custody after being deported to India. Haldar is still in custody because his two-year term of supervised release has yet to expire. *See United States v. Buddhi*, 2014 WL 2042287, at *1 n.1 (N.D. Ind. May 19, 2014) (A "deported defendant" with an

unexpired term of supervised release "is still in custody for purposes of § 2255, even if that defendant is no longer being actively supervised") (citing *United States v. Akinyemi*, 108 F.3d 777, 778-80 (7th Cir. 1997) and *United States v. Wilson*, 240 F. App'x 139, 144 (7th Cir. 2007)). Therefore, Haldar's motion to convert his § 2255 motion is denied, and for the reasons that follow, Haldar's motion is denied on the merits.[1]

Section 2255 requires the Court to vacate, set aside, or correct the sentence of a prisoner in custody if it finds that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." Ineffective assistance of counsel claims, such as those at issue here, "may be brought in a collateral proceeding under 2255, whether or not the petitioner could have raised the claim on direct appeal." *Massaro v. United States*, 538 U.S. 500, 504 (2003).

Under *Strickland v. Washington*, 466 U.S. 668 (1984), Haldar must prove (1) that his attorney's performance fell below an objective standard of reasonableness and (2) that the attorney's deficient performance prejudiced

---

[1] Haldar's request for an evidentiary hearing is denied. *Kafo v. United States*, 467 F.3d 1063, 1067 (7th Cir. 2006) (if "the motion and the files of records of the case conclusively show that the prisoner is entitled to no relief" then a hearing is not required).

the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *McDowell v. Kingston*, 497 F.3d 757, 761 (7th Cir. 2001). "The benchmark for judging any claim to ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

First, Haldar argues that his attorney was ineffective for failing to properly challenge searches that took place at O'Hare International Airport. Under the "functional equivalent" doctrine, routine border searches are constitutionally permissible at places other than actual borders – such as O'Hare Airport – where travelers frequently enter or exit the country. *United States v. Yang*, 286 F.3d 940, 944 (7th Cir. 2002) (citing *Almeida-Sanchez v. United States*, 413 U.S. 266, 272-73 (1973)). Haldar argues that the searches were not routine because they were pre-planned: Scott Engelhardt, a Special Agent with the Department of Homeland Security, arranged to be at O'Hare when Haldar arrived so he could participate in the searches. However, in "determining whether an inspection made at the border was routine, courts have focused on the degree of intrusion into a border entrant's legitimate expectations of privacy. *Routine border inspections are those that do not pose a serious invasion of privacy and that do not embarrass or offend the average*

- 3 -

*traveler.*" *United States v. Johnson*, 991 F.2d 1287, 1291 (7th Cir. 1993) (emphasis added). Haldar was not subject to a serious invasion of privacy. Instead, Agent Engelhardt only searched Haldar's luggage and personal effects. Tr. 103-117. This was a routine border search. "A search at the border of a traveler's luggage is routine. The search of a border entrant's suitcase, purse, wallet, and overcoat simply is not sufficiently intrusive to be considered nonroutine. By contrast, a body cavity or strip search of the border entrant himself is significantly more intrusive and most certainly is *non*routine." *Id.* (emphasis in original).

Second, Haldar argues that counsel was ineffective for failing to detect inaccuracies in government-made translations of transcripts that reflect conversations between Haldar and one of the fraudulent priests, Gupreet Singh. In the translation admitted at trial, Haldar stated to Singh: "Now tell me, when do you think you will *give* me my money." Haldar claims that the correct translation is: "Just tell me when you are going to *return* my money." Haldar also asked Singh: "You keep on paying money (UI [unintelligible] laughs)." Haldar claims that the unintelligible portion should read: "why you do this?" According to Haldar, the corrected version supports his defense that Singh was repaying Haldar for certain expenses covered by Haldar, not paying money owed for securing a fraudulent visa. Even if Haldar's counsel was ineffective for not challenging these discrepancies, Haldar was not

- 4 -

prejudiced because the evidence of his guilt from other sources was overwhelming. For example, three of the fraudulent priests, including Singh, testified as to the same basic facts: payment of a substantial initial fee in India; subsequent installment payments in the United States; no intention to become a priest; training by a Haldar associate on how to "act like a priest;" and completion of the fraudulent visa application, also by a Haldar associate. In light of this and other evidence presented at trial, Haldar's guilt was obvious.

Third, Haldar argues that the government impermissibly commented upon his decision not to testify. *See, e.g.,* Tr. at 448 ("Again, what would be the explanation as to how that was hatched in advance?"); Tr. at 452 ("He's on tape acknowledging a $10,000 debt, for which the evidence is established – the only explanation for that is a religious worker Visa fraud debt"). "So long as the jury has been properly instructed that the burden of proof belongs to the government and that the defendant has no burden to present any evidence," the Seventh Circuit has "generally permitted comments on the lack of evidence supporting a theory of defense, provided that the comments do not implicate or 'tax' the defendant's right not to testify." *United States v. Roux*, 715 F.3d 1019, 1031 (7th Cir. 2013). Nothing stopped Haldar from presenting evidence in support of his reimbursement theory of defense through means other than his own testimony – including, for example, by cross-examining

- 5 -

Singh and the other fraudulent priests that testified regarding Haldar's scheme at trial. Therefore, Haldar's right not to testify was not "taxed" by comments directed at Haldar's failure to present evidence in support of his defense theory, and counsel was not ineffective for failing to raise the issue at trial or on appeal.

Fourth, Haldar argues that counsel was ineffective for failing to request "a theory of defense instruction stating that [Haldar] could not have the necessary criminal intent if his actions concerning the acceptance of money from the CI were based upon his authority as the spiritual leader and head of his temple accepting donations or reimbursement." Motion at 9. This theory was already part of the charge, so there was no need to request the specific language posited by Haldar. R. 36 at 20 ("The phrase 'intent to defraud' means that the acts charged were done knowingly with the intent to deceive or cheat the United States in order to deprive the United States['] right to have its business and its affairs, and particularly the transaction of the official business of the United States Department of State, conducted free from corruption, fraud, and dishonesty"); R. 36 at 21 ("Good faith on the part of Sagarsen Haldar is inconsistent with intent to defraud an element of the charge. The burden is not on the defendant to prove his good faith; rather, the government must prove beyond a reasonable doubt that Sagarsen Haldar acted with intent to defraud"); *see United States v. Prude*, 489 F.3d 873, 882

- 6 -

(7th Cir. 2007) (a defendant is "not entitled to a jury instruction as to his or her particular theory of defense" if the instruction "reflects a theory which is … already part of the charge").

Fifth, Haldar argues that counsel was ineffective for failing to argue that certain meetings alleged to have happened in India between Haldar and the testifying fraudulent priests were "factually impossible." The evidence cited by Haldar, as the government notes, does not support this assertion. For example, the sworn statement by Singh, Exhibit H15, contains a general assertion that Singh met with Haldar in India, but it does not provide a specific date for the meeting. Haldar also claims that he was under a doctor's care, but the documents provided by Haldar, Ex. H24, pertain to a knee issue, and none of the documents suggest that Haldar could not travel overseas during that time period. *See, e.g., Bruce v. United States*, 256 F.3d 592, 597 (7th Cir. 2001) ("a hearing is not necessary if the petitioner makes allegations that are 'vague, conclusory, or palpably incredible,' rather than 'detailed and specific'").

Finally, Haldar argues that counsel was ineffective for failing to challenge Blanca Cervantes' denial that her address in Watertown, Wisconsin, held out as the Sri Hanumanta Yoga and Vedic Meditation Center, was actually being used as a GVS temple. In this regard, Haldar filed a notarized letter addressed to the United States Embassy explaining the need for

- 7 -

another priest at the Center in Watertown. Ex. H19. This letter was signed by Ms. Cervantes, but at trial, Cervantes explained that she signed lots of documents in her capacity as President of the Temple but that she "really didn't read them." Tr. at 362. In fact, Cervantes' testimony suggests that Haldar was signing documents on her behalf. *Id.* at 363 ("It looks like my signature, but I think the 'T' looks funny"). Therefore, Haldar's counsel was not ineffective for failing to pursue this line of questioning.

In connection with this Order, the Court must also issue or deny a certificate of appealability. Rule 11(a), Rules Governing Section 2255 Proceedings. Jurists of reason would not debate whether Haldar's motion "should have been resolved in a different manner or that the issue[s] presented [were] adequate to deserve encouragement to proceed further." *Ouska v. Cahill-Masching*, 246 F.3d 1036, 1046 (7th Cir. 2001). Therefore, the Court will not issue a certificate of appealability. 28 U.S.C. § 2253(c)(2).

Also before the Court is Haldar's motion for the return of property. In response, the government explains that much of what Haldar asks to be returned was destroyed, and the Department of Homeland Security has been trying to reach Haldar in India to return items still in its possession. Therefore, the Court will deny Haldar's motion without prejudice to its renewal if the government fails to return all of the non-destroyed items requested by Haldar.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:**

1. Haldar's motion to expedite or convert [ECF No. 4] is **DENIED**;

2. Haldar's motion for the return of property [ECF No. 98 in Case No. 10-CR-268] is **DENIED** without prejudice; and

3. Haldar's motion to vacate, set aside or correct his sentence [ECF No. 1] is **DENIED**. The Court will not issue a certificate of appealability. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 26th day of October, 2015.

                              **BY THE COURT:**

                              */s/ Rudolph T. Randa*
                              **HON. RUDOLPH T. RANDA**
                              **U.S. District Judge**